NEWPORT HOSPITAL *vs.* WILLIAM R. HARVEY.

DECEMBER 30, 1927.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

BARROWS, J. This case formerly was here on erroneous certification. 47 R. I. 382. The Attorney-General has been made a party since it went back to the Superior Court and it now comes to us on respondent's appeal from a decree directing him to specifically perform a contract by which he agreed to purchase certain real estate from complainant.

No question of fact was raised. The legal question is whether complainant can convey the land in fee simple. This depends upon the construction to be given to a paragraph of the will of John Alfred Hazard, late of Newport,

who died May 2, 1880, and which will, executed December 26, 1876, was duly admitted to probate. By its terms, after payment of debts and provision that "my wife shall have no portion of my property but only her dower in my real estate" he gave five thousand dollars to a servant and five hundred dollars to a cemetery corporation for perpetual care of his lot. All the rest, residue and remainder of his estate he devised and bequeathed to "The Newport Hospital" in trust: (1) "to set apart and invest five Thousand Dollars raising said sum by sale of my real estate if necessary and pay and apply the income thereof to and for the use of Samuel C. Clinton" . . . for his life; (2) to set apart in the same way for Mrs. Rebecca Stanley ten thousand dollars; (3) "to forever keep in good order the monuments, graves, grounds and fences of the Easton Burial Lot on my farm at Sachuset Beach in Middletown"; (4) "to forever use and apply the whole residue and remainder of said trust property" for medical care of the poor under such regulations as the trustees of the hospital from time to time should prescribe, "the object hereof being to benefit as many such poor persons as practicable and at the same time provide and secure a permanent source of aid, remedy and relief"; for the carrying out of such purpose testator provided that the trustees of the hospital "shall always have power to sell and change the investment of said trust property and every portion and parcel thereof whenever and as often as it may seem desirable to do so . . . and with continuous power to sell and change investments as aforesaid." As a part of said fourth provision, immediately following the above, appears the following paragraph: "But I particularly desire and recommend that no part of my said farm in Middletown shall ever be sold or in any way aliened or disposed of except by lease or leases for a term of not more than ten years each, from time to time as may seem proper."

The clause last quoted is the cause of the present litigation. Respondent contends that complainant can not sell

the Middletown farm of which the land he agreed to buy is a portion. The farm constituted only one parcel of testator's real estate holdings. Respondent urges that the later clause is inconsistent with the earlier giving an unlimited power of sale and so far as inconsistent curtails that power in accordance with the well settled rule in such cases. *Frelinghuysen* v. *N. Y. Life Ins. & Trust Co.*, 31 R. I. 150; *Goffe* v. *Goffe*, 37 R. I. 542 at 553-4; *Industrial Trust Co.* v. *McLaughlin*, 44 R. I. 350; *Re Cabell*, 46 R. I. 372.

Few extrinsic circumstances exist to aid us. Testator owned considerable real estate near the ocean. The wisdom of this sale in prudent business management of the trust property is not involved. The question is solely one of power under the will. This is the first attempted sale of any portion of the farm. It is not denied that the first grant of authority to sell is explicit and includes the Middletown farm unless modified by the later expression of recommendation and desire.

It is agreed that the problem must be solved by ascertainment of testator's intention as shown by his whole will. That intention, if doubtful, is to be found by application of well settled principles of law. *Hochstedler* v. *Hochstedler*, 108 Ind. 506 (1886). One cardinal rule is to give effect to every portion of the will reconciling, if it fairly may be done, clauses susceptible of inconsistent construction. *Frelinghuysen* v. *Trust Co.*, *supra; Industrial Trust Co.* v. *McLaughlin*, 44 R. I. 350; *Roberts* v. *Roberts*, 140 Ill. 345 (1892); *McClure* v. *McClure*, 319 Ill. 271 (1925). Schouler on Wills, 6th ed. Vol. 2, § 900, p. 1035, says: "A later clause in a will must be deemed to affirm not to contradict an earlier clause if such construction can fairly be given. The effort . . . is to reconcile the instrument in all its parts and make the disposition a consistent whole: for in construing doubtful language that interpretation should be preferred which gives consistency to the whole will rather than one which requires inconsistency. Ambiguous expressions therefore though capable of limiting a plain gift

already made will not be readily allowed this effect."
*Temple* v. *Sammis*, 97 N. Y. 526 (1884).

In looking at this will "as far as possible from the testa-
tor's point of view" (*Perry* v. *Brown*, 34 R. I. 203, at 217)
we see his scheme to employ productively the "whole
residue and remainder of his trust property" to give medical
aid to the poor. His object was not left to inference. It
was expressly stated. All the trust property was to be
available for such purpose pursuant "to such rules and
regulations in the premises as the Trustees . . . may
from time to time in their discretion prescribe forever."
He left to the trustees the management and control of the
trust property with unlimited power to sell "every portion
and parcel thereof" whenever and as often "as it may seem
desirable to do so." One whose dominant purpose was so
clearly expressed to rely upon the unfettered judgment of
the trustees in the sale and disposition of all of his real
estate, readily should not be found by a later expression of
doubtful or uncertain meaning to have intended to limit
such general purpose. *Barrett* v. *Marsh*, 126 Mass. 213;
*In re Vernier's Estate*, 282 Pa. St. 194 (1925). At the time
the will was executed perhaps the farm was serviceable as a
source of supply for hospital patients. Prospects for appre-
ciation of the farm in value may have seemed to the testator
greater than those of other parcels of his real estate. Such
reasons would explain the later clause. It freely may be
conceded that the interpretation placed upon the clause in
question by respondent is not a forced or impossible one and
that "desire" and "recommend" have often been construed
in trust wills as equivalent to command "clothed merely in
language of civility." *Trustees of Pembroke Academy* v.
*Epsom School District*, 75 N. H. 408; 40 Cyc. 1740; but
they are equally susceptible of interpretation as hortatory
words. *Barrett* v. *Marsh, supra;* 40 Cyc. 1738. Indeed,
such is their primary significance. 40 Cyc. 1734. In the
presence of this ambiguity the rule of construction above
referred to requires, if possible, such an interpretation of the

later clause as to make it consistent with the earlier grant of unlimited power of sale. This may be done by holding that the later language expressed the testator's hope, which he did not intend, to make an imperative command. Such a construction avoids a conflict with the earlier provision giving the trustees unlimited power to dispose of any and all portions of the trust estate at any and all times and will not limit or modify the powers already given. The later clause simply is advisory. The word "desire" in a trust will has been construed in Rhode Island as a personal recommendation rather than as an imperative command in *Ogden, Petr.*, 25 R. I. 373, concerning the location of a war memorial. *Cahill* v. *Tanner*, 43 R. I. 403, declined to impress a trust upon real estate devised with a "request" for certain disposition of the property. In the will before us we have a clearly expressed general intention to benefit the poor and to do so the giving of the largest discretion to the complainant as to use and disposal of the testator's real estate. The will evinces no such clear indication that testator permanently desired to control the trustees in the handling or disposal of the trust estate as to require us to hold the clauses inconsistent. The testator's general charitable intent was not defeated or diminished by his later ambiguous expression capable of, but not necessarily requiring, a construction inconsistent with the earlier specific grant of unlimited power. This was the construction adopted by the Superior Court and the decree for specific performance was warranted.

Respondent's appeal is denied; the decree appealed from is affirmed and the cause is remanded to the Superior Court for further proceedings.

*Burdick, Corcoran & Peckham*, for complainant.
*William P. Sheffield, J. Russell Haire*, for respondent.